Filed 5/5/22  P. v. Larios CA5
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RICHARD RODRIGUEZ LARIOS,<br><br>    Defendant and Appellant. | F078759<br><br>(Super. Ct. No. VCF211993C)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal; and Cheryl L. Harbottle for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Richard Rodriguez Larios appeals from an order denying a petition for recall of sentence and resentencing on three counts of attempted murder.  The petition was filed

pursuant to Penal Code[1] section 1170.95 as originally enacted by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437). In a prior decision, this court concluded the petition was properly denied because section 1170.95 afforded no relief to defendants convicted of attempted murder. The California Supreme Court has ordered the prior decision vacated and directed us to reconsider the cause in light of Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775).

Senate Bill 775 amended section 1170.95 to expressly provide for the availability of relief to persons convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1170.95, subd. (a).) The legislation also added a provision concerning petitioners' entitlement to appointed counsel. (*Id*., subd. (b)(3).) Although Larios requested the appointment of counsel and was unrepresented when his petition was denied, the record shows he was convicted of attempted premeditated murder based on a theory of direct aiding and abetting liability. In other words, he was not convicted under the natural and probable consequences doctrine. We thus conclude he was not prejudiced by the lack of representation. The challenged order will be affirmed on those grounds.

### FACTUAL AND PROCEDURAL BACKGROUND

We grant Larios's request to take judicial notice, pursuant to Evidence Code section 452, subdivision (d), of the unpublished opinion in *People v. Larios* (Aug. 19, 2011, F059866) (*Larios I*). The opinion provides the following summary:

"Larios and his codefendant Ronnie Zuniga were two of three Norteno occupants of a brown or tan Mercury Cougar automobile that stopped to get gas at a convenience store on Bardsley Avenue in Tulare. Already there at a gas pump was a black Nissan Maxima occupied by two Surenos, Irving Rodriguez and Juan Saucedo, and a friend of Rodriguez's since childhood, 17-year-old Stephanie [G.] After some staring or 'mad dogging' between the rival gang members at the gas pumps, and a brief verbal exchange

---

[1]All undesignated statutory references are to the Penal Code.

between Norteno Zuniga and Sureno Saucedo when the two men went inside the store to pay for gas, the Cougar followed the Maxima when the Maxima drove away from the convenience store. A short distance away, approximately five gunshots were fired from the Cougar, at least four of which struck the Maxima. None of the bullets struck any of the three occupants of the Maxima, although [Stephanie G.] received cuts from shattered window glass.

"A first trial ended in a mistrial when the jury could not reach a verdict. In the second trial, the subject of this appeal, a jury found both Larios and Zuniga guilty of three counts of premeditated attempted murder (… §§ 664/187, subd. (a)) and one count of shooting at an occupied motor vehicle (§ 246). The jury also found that the crimes were committed for the benefit of a street gang (§ 186.22, subd. (b)(4)) and that a principal personally discharged a firearm in the commission of each crime (§ 12022.53, subds. (c) and (e)(1)). Each defendant was sentenced to a term of 54 years to life." (*Larios I*, *supra*, F059866, fn. omitted.)

In *Larios I*, this court directed the trial court to strike the 20-year section 12022.53 enhancement imposed and stayed on count 4, but in all other respects, affirmed. The remittitur issued on November 3, 2011.

On January 2, 2019, Larios petitioned the Tulare Superior Court for relief under section 1170.95. By checking boxes on a preprinted form, Larios alleged he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he "could not now be convicted of 1st or 2nd degree murder because of changes made to [sections] 188 and 189, effective January 1, 2019." By checking additional boxes, Larios declared: "I was not the actual killer"; "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; and "I was not a major participant in the felony **or** I did not act with reckless indifference to human life during the course of the crime or felony."

3.

Larios's petition further requested the appointment of counsel "during [the] re-sentencing process." One week later, on January 9, 2019, the trial court ruled as follows: "The Petition is denied. Petitioner was convicted of Three (3) counts of Attempted Murder (in violation of … Section 664/187) and is unable to establish a prima facie basis of eligibility for relief."

A timely notice of appeal was filed on January 25, 2019. Larios's appointed appellate counsel asked this court for an independent review of the record to determine whether there were any arguable issues. (See *People v. Wende* (1979) 25 Cal.3d 436.) After being notified of his right to file a separate brief (see *People v. Kelly* (2006) 40 Cal.4th 106, 120), Larios made supplemental contentions regarding the applicability of the natural and probable consequences doctrine to his case. After considering those arguments, this court requested briefing from counsel on whether Senate Bill 1437 eliminated any theories of derivative liability for attempted murder.

In December 2019, this court issued an opinion affirming the denial of Larios's section 1170.95 petition. The California Supreme Court later accepted the case for review on a grant-and-hold basis. In February 2022, the cause was transferred back to this court with directions to vacate the prior decision and reconsider the appeal in light of Senate Bill 775. The parties have since filed supplemental briefs.

The People contend "Senate Bill No. 775's amendments to section 1170.95 are of no benefit to [Larios] because, although he was convicted of three counts of attempted murder, he was not convicted under the natural and probable consequences doctrine. … Remand would therefore be futile because he is ineligible [for resentencing]." Larios argues Senate Bill 775 applies retroactively to his case; the trial court's failure to appoint counsel was a reversible error; and "there is no basis in the record to determine whether the jury relied on an inadequate theory of aiding and abetting."

4.

## DISCUSSION

Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) In short, the Legislature intended for "[a] person's culpability for murder … [to] be premised upon that person's own actions and subjective mens rea." (*Id.*, subd. (g).) This was accomplished through amendments to sections 188 and 189.[2] Senate Bill 1437 also created section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.)

As originally enacted, section 1170.95 required the filing of "a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) In

---

[2]The 2019 amendment to section 188 added the following provision: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime*." (§ 188, subd. (a)(3), italics added; Stats. 2018, ch. 1015, § 2.) The amendments to section 189 pertain to the felony-murder rule, but they are not relevant to Larios's case because "California has no crime of attempted felony murder." (*People v. Billa* (2003) 31 Cal.4th 1064, 1071, fn. 4, citing *People v. Bland* (2002) 28 Cal.4th 313, 328.)

both the current and former versions of section 1170.95, the petition must also state "[w]hether the petitioner requests the appointment of counsel." (*Id*., subd. (b)(1)(C).)

With the recent enactment of Senate Bill 775, the Legislature clarified "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief [under section 1170.95] as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) Section 1170.95 now provides, in relevant part:

> "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, *attempted murder*, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *or attempted murder under the natural and probable consequences doctrine*.

> "(2) The petitioner was convicted of murder, *attempted murder*, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

> "(3) The petitioner could not presently be convicted of murder *or attempted murder* because of changes to Section 188 or 189 made effective January 1, 2019." (Italics added.)

Senate Bill 775 also "[c]odifies the holdings of [*Lewis*, *supra*, 11 Cal.5th at pages] 961–970, regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case." (Stats. 2021, ch. 551, § 1, subd. (b).) As relevant here, *Lewis* held petitioners "are entitled to the appointment of counsel upon the filing of a

6.

facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'" (*Lewis*, *supra*, at p. 957.)  Section 1170.95 now provides that "[u]pon receiving a petition in which the information required by [subdivision (b)] is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner."  (*Id*., subd. (b)(3).)

The erroneous denial of counsel at the "prima facie stage" of section 1170.95 proceedings is reviewable for prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818.  (*Lewis*, *supra*, 11 Cal.5th at p. 974.)  The aggrieved petitioner "must therefore 'demonstrate there is a reasonable probability that in the absence of the error he … would have obtained a more favorable result.'  [Citations.]  More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'"  (*Ibid*.)

"[A]t the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Lewis*, *supra*, 11 Cal.5th at p. 974.)  However, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95."  (*Id*. at p. 971.)  "'[I]f the record, *including the court's own documents*, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Ibid*., italics added.)

Turning to Larios's claims, we need not reach the issue of retroactivity.  Assuming Senate Bill 775 applies retroactively, neither the trial court's failure to appoint counsel

7.

nor its denial of the section 1170.95 petition are reversible errors.  The record plainly shows Larios is ineligible for relief as a matter of law.

An aider and abettor is one who acts "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense."  (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)  "[P]roof of an *attempt* by a direct perpetrator is sufficient for purposes of aiding and abetting liability.  If a direct perpetrator is thwarted and guilty only of an attempt, an aider and abettor may still be guilty of aiding and abetting the attempt."  (*People v. Perez* (2005) 35 Cal.4th 1219, 1226.)

Under the natural and probable consequences doctrine, "'[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.  The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable.  [Citation.]'  [Citation.]  Liability … 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.'"  (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

"Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent."  (*People v. Gentile* (2020) 10 Cal.5th 830, 844.)[3]  Direct aiding and abetting liability "is based on the combined actus reus of the participants and the aider

---

[3]The *Gentile* opinion was superseded by Senate Bill 775 on an unrelated issue.  The California Supreme Court had concluded "that the procedure set forth in section 1170.95 is the exclusive mechanism for retroactive relief and thus the ameliorative provisions of Senate Bill 1437 do not apply to nonfinal judgments on direct appeal."  (*People v. Gentile*, *supra*, 10 Cal.5th at p. 839.)  In apparent response to this holding, the Legislature added subdivision (g) to section 1170.95.  It states:  "A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437."

8.

and abettor's own mens rea."  (*People v. Powell* (2021) 63 Cal.App.5th 689, 712–713.) Senate Bill 1437's amendments to sections 188 and 189 did not eliminate vicarious liability under direct aiding and abetting principles.  (*Gentile*, at p. 848.)  Therefore, persons convicted of attempted murder based on a theory of direct aiding and abetting are not eligible for relief under section 1170.95.  (See *id*., subd. (a)(3) [petitioner must show he or she "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019"].)

The jury that convicted Larios was instructed on attempted murder pursuant to CALCRIM No. 600, which explained the requirement of an intent to kill.  Further instructions were given pursuant to CALCRIM No. 401 regarding direct aiding and abetting liability.  The jury was *not* instructed pursuant to CALCRIM Nos. 402 or 403, nor was it otherwise instructed on the natural and probable consequences doctrine.  (See Bench Notes to CALCRIM No. 401 [stating, inter alia, "If the prosecution charges non-target crimes under the Natural and Probable Consequences Doctrine, give CALCRIM No. 402 … if both non-target and target crimes have been charged.  Give CALCRIM No. 403 … if only the non-target crimes have been charged"].)

Respondent notes the absence of "any instructions on [a] natural and probable consequences theory."  Larios does not contend otherwise, but he argues the CALCRIM No. 401 instruction was "legally incorrect" because it did not discuss principles of implied malice.  He specifically complains the instruction omitted "[t]he requirement that [Larios] 'knows that his conduct endangers the life of another and acts with conscious disregard for life.'"  The argument is nonsensical.

Knowing one's conduct endangers the life of another and acting with conscious disregard for life is the mental state of implied malice.  (*People v. Cravens* (2012) 53 Cal.4th 500, 507; *People v. Chun* (2009) 45 Cal.4th 1172, 1181.)  "Attempted murder requires express malice, i.e., intent to kill.  Implied malice—a conscious disregard for life—suffices for murder but not attempted murder."  (*People v. Stone* (2009) 46 Cal.4th

131, 139–140; see *People v. Brito* (1991) 232 Cal.App.3d 316, 321 ["California courts have consistently held that there are no crimes of attempted felony murder, attempted murder based on implied malice, and attempted involuntary manslaughter, since all of these crimes by definition do not require the defendant have the specific intent to kill"].) Therefore, it was entirely proper that no instructions were given to Larios's jury regarding implied malice.

In summary, the record indicates Larios was prosecuted for attempted murder based on a theory he was either the shooter or a direct aider and abettor who acted with the intent to kill. The jury convicted him of attempted murder and made true findings on allegations of premeditation and deliberation. Because Larios cannot show he was convicted based on the natural and probable consequences doctrine, he is ineligible for relief under section 1170.95 as a matter of law. (Accord, *People v. Coley* (2022) __ Cal.App.5th __, __ [2022 Cal.App. LEXIS 319 at *13].) It follows that Larios was not prejudiced by the trial court's failure to grant his request for appointed counsel.

## DISPOSITION

The order from which the appeal is taken is affirmed.


PEÑA, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


FRANSON, J.

10.